UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-216-GWU

SHELBY MERIDA,                                                          PLAINTIFF,

VS.                             **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled.  If no, proceed to Step 2.
        See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)? If yes, proceed to Step 3.  If no, the
        claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities?  If yes, proceed to

1

07-216  Merida

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

07-216  Merida

First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-216  Merida

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.,</u> <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-216  Merida

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Shelby Merida, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments consisting of disc bulges at L4-L5 and L5-S1, chronic obstructive pulmonary disease secondary to tobacco abuse, borderline intellectual functioning, and residuals of a left arm fracture (status post open reduction internal fixation in 1992). (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Merida retained the residual functional capacity to perform jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 18-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 53, illiteracy, and work experience as a truck driver, heavy equipment operator, bulldozer operator, and reclamation laborer could perform any jobs if he were limited to "medium" exertion with a sit/stand option, and also had the

7

following non-exertional restrictions.  He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally reach or lift overhead or push and pull with his non-dominant left upper extremity; (3) could engage in no more than frequent stooping, bending, crouching, crawling, or climbing ramps or stairs; (4) had to avoid concentrated exposure to pulmonary irritants or temperature and humidity extremes; (5) was limited to no more than simple job instructions and casual interaction with the public, coworkers, and supervisors; and (6) could have no more than occasional changes in the work setting or routine and no job where reading was an essential element.  (Tr. 304-6).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 306).

On appeal, the court must determine whether the hypothetical factors are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Merida alleged disability due to arthritis in his knees, arms, and back, bulging discs, numbness and pain in his legs, and "limited education."  (Tr. 72).

The plaintiff does not challenge the accuracy of the hypothetical physical restrictions, but the court notes that the medical evidence includes normal x-rays of the knees (Tr. 176) and an MRI of the lumbosacral spine showing some Schmorl's nodes, which the radiologist commented were not usually significant, and some apparent bulging at two levels but no herniation or effacement of the nerve roots

8

(Tr. 177).  One of the plaintiff's treating physicians, Dr. Talmadge Hays, noted at one point that Mr. Merida was applying for Social Security "and obviously benefits will probably be obtained on the basis of trouble with his lungs and perhaps his heart." (Tr. 183).  However, a chest x-ray showed no evidence of acute pulmonary disease (Tr. 207), an echocardiogram was essentially normal (Tr. 196) and an exercise treadmill test showed satisfactory exercise capacity and was negative for ischemia.  (Tr. 199, 212).  The plaintiff also stated at the hearing that a cardiac catherization had been performed and it "looked pretty good." (Tr. 291-2).  A recent left arm x-ray confirmed a previous fracture with "hardware in place," but the physician's impression was merely that the plaintiff had an acute strain at the present time, and no functional restrictions were imposed.  (Tr. 253-4).  Essentially, there is no evidence to contradict the opinion of a state agency reviewing physician that the plaintiff did not even have a "severe" physical impairment.  (Tr. 243).  The ALJ gave Mr. Merida the benefit of the doubt in imposing the physical limitations in the hypothetical question.

The plaintiff does raise the issue of his mental functioning on appeal.  School records show that Mr. Merida obtained an IQ score of 68 on the Lorge-Thorndike test in April, 1966, when he was just short of 13 years of age and in the fifth grade. (Tr. 138).  There is also a reference to an "American" test in October, 1966 which

07-216  Merida

showed an IQ of 59.  (Id.).[1]  State agency psychologists opined that he did not have

a medically determinable impairment.  (Tr. 214, 229).  Mr. Merida had no

subsequent IQ testing prior to the hearing.  At that time, he testified that he had tried

hard in school but did not make good grades, and there was no special education

at the time.  (Tr. 298-9).  He gave somewhat confusing testimony about his literacy,

indicating that he could read parts of a newspaper and could read road signs pretty

well, and initially said that he had passed a written driver's license test.  (Tr. 281-2).

On further questioning by his attorney, Mr. Merida said that the driver's license

questions had been read off to him, and he took the test four times before passing.

(Tr. 298).  His counsel brought the 1966 IQ testing to the ALJ's attention, and

suggested that further intelligence testing might be appropriate.  (Tr. 307-8).  The

ALJ responded that he would consider doing so (Tr. 308), but in his decision noted

that the plaintiff had a long history of heavy equipment/bulldozer operation, which

the VE had described as skilled work (Tr. 16).  Therefore, the ALJ concluded that

the 1966 IQ scores were not sufficient to establish mental retardation.  (Id.).

Following the ALJ's decision, Mr. Merida's counsel had him undergo

evaluation by Reba Moore, a licensed psychological practitioner, who obtained a

---

[1]The plaintiff does not argue that the IQ tests obtained at the ages of 12 and 13, by themselves, establish mental retardation as an adult.  Social Security Ruling 82-54 provides that IQ testing obtained between the ages of 7 and 16 is current for only two years, if the individual's IQ is 40 or above.  See Elam ex rel. Golay v. Commissioner of Social Security, 348 F.3d 124, 125 (6th Cir. 2003).

verbal IQ score of 66, a performance IQ of 75, and a full scale IQ of 67 on the Wechsler Adult Intelligence Scale–Third Edition.  Docket Entry No. 9, Attachment 1, p. 3.  The psychologist opined that the IQ scores were accurate, and diagnosed mild mental retardation, in addition to "an anxiety disorder superimposed on a dysthymic disorder."

Counsel for the plaintiff maintains that the new evidence warrants a remand for consideration under Sentence Six of 42 U.S.C. § 405(g).  He asserts that it is both new and material in that there was a reasonable probability that the Commissioner would have reached a different decision had it been available to the ALJ.  However, in addition to showing materiality, the plaintiff has the burden of showing that there was "good cause" for failing to obtain the evidence earlier.  Cline v. Commissioner of Social Security, 96 F.3d 146, 148-9 (6th Cir. 1996).  Cline also concerned a case in which counsel had obtained psychological testing which was not submitted until after the ALJ's decision.  The Sixth Circuit found that good cause did not exist for the late submission of the additional evidence even though counsel maintained that he was not aware that psychological testing might be necessary until the hearing.  Id. at 149.  In the present case, it was clear that Mr. Merida's attorney was aware of a possible issue regarding intellectual functioning even well before the hearing, but chose to leave it to the ALJ's discretion whether to obtain additional testing.  (Tr. 308).  The ALJ did not commit himself to ordering additional

11

07-216  Merida

testing, and provided a reasonable basis in his decision for concluding that it was not necessary.  There were no circumstances that would have prevented counsel from obtaining a report from Reba Moore or another source in time for it to have been considered by the ALJ, merely a tactical decision by counsel not to do so. This clearly does not represent "good cause."

The decision will be affirmed.

This the 16th day of April, 2008.

Signed By:

G. Wix Unthank

United States Senior Judge